COURT OF APPEALS OF VIRGINIA


Present:  Judges Benton, Willis and Senior Judge Hodges
Argued at Richmond, Virginia


UNITED PARCEL SERVICE OF AMERICA AND
 LIBERTY MUTUAL FIRE INSURANCE COMPANY
                                        MEMORANDUM OPINION* BY
v.    Record No. 2488-01-2          JUDGE JERE M. H. WILLIS, JR.
                                           MAY 14, 2002
DOUGLAS J. WHEELER, SR.


          FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

               John Chadwick Johnson (Christopher M. Kite;
               Catherine I. Henritze; Frith Anderson &
               Peake, P.C., on brief), for appellants.

               Gregory O. Harbison (Geoffrey R. McDonald &
               Associates, on brief), for appellee.


     United Parcel Service of America ("UPS") appeals a decision

of the Workers' Compensation Commission awarding Douglas J.

Wheeler, Sr. benefits for a total knee replacement resulting

from an aggravation of a pre-existing, compensable left knee

injury.  UPS contends that the commission's finding that Wheeler

established by a preponderance of the evidence that the knee

replacement is necessitated by his accident of July 1, 1998, is

unsupported by the evidence.  We affirm the commission's

decision.

---

        * Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

## I.   BACKGROUND

On appeal, we must view the evidence in the light most favorable to the party prevailing below.  Creedle Sales Co. v. Edmonds, 24 Va. App. 24, 26, 480 S.E.2d 123, 124 (1997).

### A.   INJURIES

Douglas Wheeler has been employed by UPS as a package car and truck driver for over thirty years, during the course of which he has sustained several workplace accidents.  In July 1982, he injured his left knee and was treated by Dr. Crickenberger for a torn medial meniscus.  On September 16, 1982, Dr. Crickenberger performed surgery on Wheeler's left knee.  He released Wheeler to light duty on December 6, 1982.

On April 25, 1983, Wheeler returned to Dr. Crickenberger. He complained that he had experienced increased swelling in his left knee over the previous four weeks, as a result of striking his knee on a metal bar as he stood from a table.  On May 2, 1983, Dr. Crickenberger diagnosed traumatic fusion of the left knee.  Wheeler returned to full duty that day.

On August 30, 1983, Wheeler returned to Dr. Crickenberger for a six-month check-up.  Dr. Crickenberger noted that "[i]n view of the recurrent synovial thickening and effusion and the fact that the taps are always bloody by history . . . I have arranged a consultation with Dr. Pendleton for rheumatology."

In September 1983, Dr. Crickenberger re-examined Wheeler. He noted that Dr. Pendleton had found no arthritis.  However, he

-

felt that further arthroscopic surgery was required and scheduled Wheeler for surgery.  On October 5, 1983, Wheeler underwent arthroscopic surgery with partial synectomy.  On October 10, 1983, Dr. Crickenberger noted that Wheeler was "up to walking a mile a day.  At surgery he was found to have significant pigmented villondular synivitis [sic] . . . ."

Between October 1983 and May 1986, Dr. Crickenberger treated Wheeler conservatively.  His office notes repeatedly diagnose Wheeler as suffering from pigmented villonodular synovitis ("PVN") and report a regimen of prescription medications.  Other than a five-week period following a December 5, 1983 visit, it does not appear that any work restrictions were placed on Wheeler.  On June 18, 1986, Wheeler once again underwent arthroscopic surgery to address the PVN. In his office note the following day, Dr. Crickenberger stated that the PVN had progressed and "basically destroyed the medial meniscus," requiring significant synovial resection.

Wheeler was released to work on September 15, 1986.  He continued to experience swelling and discomfort in the left knee.  On July 1, 1998, his left knee buckled, causing him to fall out of the cab of his truck.  He continued working for several days, but on July 6, 1998, he sought medical treatment from Dr. Powledge.  Because of Wheeler's long-standing treatment history with Dr. Crickenberger, Dr. Powledge referred him to Dr. Crickenberger.

-

Dr. Crickenberger examined Wheeler on July 21, 1998 and referred him to Dr. McCue. On August 17, 1998, Dr. McCue recommended a synovectomy, which was performed on October 1, 1998. During follow-up treatment, between December 1998 and May 1999, both Dr. Crickenberger and Dr. McCue noted that Wheeler had persistent swelling/effusion of the left knee. On June 28, 1999, Wheeler reported decrease in pain and exhibited a range of motion of zero to ninety degrees. He was released to work.

On September 20, 1999, Dr. Crickenberger again saw Wheeler and noted continued diffuse swelling. He also noted that the knee had good range of motion and was stable. On the same day, Dr. McCue noted in a letter to Dr. Crickenberger that Wheeler "may well be ready for a knee replacement." On June 22, 2000, Dr. Crickenberger advised Wheeler to undergo the surgery. In his notes he addressed the relationship between Wheeler's PVN and the March 1982 accident.

> Certainly the patient had the injury to his knee approximately 3/82. No problem prior to that. Whether or not the PVN was there at the time of the injury there is no way of knowing, but that if it were there certainly you can argue that the injury aggravated an underlying problem. On the other hand, certainly people get PVN and it progresses without trauma. Patient is advised that it is difficult to look in crystal ball [sic] and make a definite decision in reference to this matter with the information available.
>
>    \*     \*     \*     \*     \*     \*     \*
>
> Patient was advised that the trauma did not cause the PVN but he has a fairly sound

-

> argument that the trauma and activities at work have contributed to the underlying problem.

> *    *    *    *    *    *    *

> I would encourage him to resolve this problem ASAP and proceed with surgery as outlined by Dr. McCue.

Wheeler elected to undergo the surgery.  However, UPS denied authorization, and the surgery was postponed pending the resolution of this issue.

### B.   EVIDENCE RELATING TO CAUSATION

On April 28, 1999, Dr. Crickenberger responded to an inquiry regarding the causal relationship between the July 1, 1998 accident and the PVN as follows:

> Is the left knee pigmented villondular synovitis causality [sic] related to the slip and fall of 07-01-98 within reasonable medical certainty?  Yes -- injury aggravated underlying synovitis.

> Is the industrial accident of the left knee on 07-01-98 the major consequentially [sic] cause of the villondular synovitis?  Yes -- synovitis pre existing injury was the major aggravating cause.

In a letter to Wheeler's then attorney, dated August 15, 2000, Dr. Crickenberger wrote, "I addressed the problem of having no problems of his knee prior to his initial injury in 3/82 and that certainly the injury could aggravate the underlying condition of PVN."

On September 19, 2000, Dr. McCue responded to a medical questionnaire and answered the following:

-

> Do you believe within a reasonable degree of
> medical probability that the injury which
> Mr. Wheeler suffered to his left knee on
> July 1, 1998 aggravated the pigmented
> villondular [sic] synovitis?  The injury
> that Mr. Wheeler suffered on 7-1-98
> certainly aggravated the pigmented
> villonodular synovitis, but no-one is
> exactly sure what the originating cause of
> the [PVN] cause [sic] itself.

> Do you believe that Mr. Wheeler would need a
> total knee replacement even if he did not
> suffer from pigmented villondular [sic]
> synovitis?  I do believe he needs a total
> knee replacement.

On January 2, 2001, Dr. Crickenberger was deposed. He testified on direct examination that the extent of Wheeler's PVN is significant and that this condition will naturally progress.  He testified that the PVN could progress to the extent of requiring a total knee replacement.  More specifically, with respect to Wheeler, he could not state how much of Wheeler's symptomatic progression was due to his injuries and how much was due to the natural course of progression of his PVN.

When asked if he could state that, absent the July 1998 accident, Wheeler would not need a total knee replacement, he answered that he "could not state that to a medical certainty." Dr. Crickenberger attributed the thickened synovial lining in Wheeler's knee to "both the PVN and the injury."  He elaborated on his opinion regarding the causal relationship:

-

Q: So his trauma or whatever trauma he had sustained as a result of the fall in July of 1998 had subsided?

A: I don't think you can separate the two completely. Certainly the trauma -- if I can elaborate. Certainly the PVN, or pigmented villus synovitis wasn't caused by the trauma. For sure it was there. Had documentation that it was there.

For sure the trauma exacerbates the underlying condition and, of course, the underlying condition is an ongoing condition.

Q: It continues to degenerate?

A: Right, and how much worse it made it, what rate it made things more rapid, I can't tell you. I tell you with the positive finding we had, tends to make you think there probably was significant injury.

   *      *      *      *      *      *      *

From that point on it's like taking a person with arthritis and hitting them in the knee with a hammer. The hammer didn't cause the arthritis, but the condition flares up and goes on.

On April 25, 2000, at the request of UPS, Dr. Powledge conducted a medical evaluation and records review of Wheeler. He concluded that no objective medical evidence established that Wheeler sustained an additional injury to his left knee as a result of his July 1998 fall. He stated his agreement with Drs. Crickenberger and McCue that a total knee replacement was needed. However, he opined that the need for the knee replacement was due to Wheeler's PVN and to the fact that the

-

condition had not responded to less drastic surgical
intervention or radiation treatments.

## C.   PROCEDURAL HISTORY

On July 1, 1998, Wheeler sustained a compensable injury to
his left knee.  Benefits were paid pursuant to an award dated
July 27, 1999, until he returned to work on June 24, 1999.  On
April 27, 2000, Wheeler filed a claim for benefits with the
Workers' Compensation Commission seeking authorization to
undergo a total knee replacement pursuant to Code § 65.2-603.

Following an October 19, 2000 hearing, Deputy Commissioner
Costa ruled that Wheeler's fall in 1998, "aggravated his
preexisting pigmented villonodular synovitis (PVN) and made a
total knee replacement necessary."  UPS timely filed a notice of
appeal, and the full commission affirmed.  UPS appeals that
decision.

## II.   ANALYSIS

UPS contends that no credible evidence supports the
commission's finding that the July 1, 1998 injury aggravated
Wheeler's pre-existing condition and necessitated a total knee
replacement.  We disagree.  Wheeler's treating physicians,
Drs. Crickenberger and McCue, were clear in their diagnoses that
the July 1, 1998 injury aggravated his pre-existing PVN
condition.  An aggravation of a pre-existing condition is
compensable.  See Southern Iron Works, Inc. v. Wallace, 16
Va. App. 131, 428 S.E.2d 32 (1993).

-

On at least three occasions, Dr. Crickenberger stated that the July 1998 injury aggravated Wheeler's underlying PVN. On April 28, 1999, he responded to a questionnaire regarding the relationship between Wheeler's July, 1998, left knee injury and the pre-existing PVN.

> 1.  Is the left knee pigmented villondular synovitis causality [sic] related to the slip and fall of 07-01-98 within reasonable medical certainty?
>
> Yes -- injury aggravated underlying synovitis.
>
> 2.  Is the industrial accident of the left knee on 07-01-98 the major consequentially [sic] cause of the villondular synovitis?
>
> Yes -- synovitis preexisting injury was the major aggravating cause.

On September 26, 2000, Dr. Crickenberger responded to a request from Wheeler's attorney for clarification of answers provided in the questionnaire.

> [A]nswering your two questions on the last page of your letter of 9/6/00.
>
> 1.  The diagnosis of nodular synovitis of left knee was first made clinically in 1982 as a "synovitis" but the pathology diagnosis of nodular synovitis [reference to PVN synovitis] was made on the pathologic report of 8/5/83 [reference to left knee].
>
> 2.  I do believe with a reasonable degree of medical probability that the work accident on 7/1/98 aggravated the underlying PVN, but certainly did not cause the PVN synovitis.

Finally, in his January 2, 2001 deposition, Dr. Crickenberger stated:

-

Certainly the PVN, or pigmented villus
synovitis wasn't caused by the trauma.  For
sure it was there.  Had documentation that
it was there.

For sure the trauma exacerbates the
underlying condition and, of course, the
underlying condition is an ongoing
condition.

　*　　　*　　　*　　　*　　　*　　　*　　　*

From that point on it's like taking a person
with arthritis and hitting them in the knee
with a hammer.  The hammer didn't cause the
arthritis, but the condition flares up and
goes on.

Like Dr. Crickenberger, Dr. McCue was clear in his

diagnosis.  On September 19, 2000, he responded to a medical

questionnaire.

[Q]:  Do you believe within a reasonable
degree of medical probability that the
injury which Mr. Wheeler suffered to his
left knee on July 1, 1998 aggravated the
pigmented villondular [sic] synovitis?

[A]:  The injury that Mr. Wheeler suffered
on 7-1-98 certainly aggravated the pigmented
villonodular synovitis, but no-one is
exactly sure what the originating cause of
the [PVN] cause [sic] itself.

Credible evidence in the record supports the commission's

finding that Wheeler's July 1, 1998 injury aggravated a

pre-existing compensable condition, necessitating a total left

knee replacement.  "Decisions of the commission as to questions

of fact, if supported by credible evidence, are conclusive and

binding on this Court."  Manassas Ice & Fuel Co., 13 Va. App.

227, 229, 409 S.E.2d 824, 826 (1991).  "The fact that contrary

-

evidence may be found in the record is of no consequence if credible evidence supports the commission's finding."  Id.

The decision of the commission is affirmed.

Affirmed.